and I represent Mr. Vega-Perez. I'm going to try to reserve two minutes for rebuttal in this case. Mr. Vega-Perez has identified three bases for this case to be overturned. Two of them deal with improper statements made by the prosecution in both the opening and in the closing. The one in the closing was formed the basis of a motion for a new trial. There was also error in the instructions. With regard to the opening and in the closing statements, in the opening, each of these are independent, but they're related in some ways, because in each of them, the prosecutor made a strategic choice. In the opening, she said, now the story now, nine months later, may be different. This is before any statement was made by the defense counsel to the jury, because this was the government's opening statement. The district court multiple times instructed the jury that opening statements are not evidence, right? That's correct. That's correct. But this Court, I think, has recognized that in some cases, the Court needs to go beyond the generic instruction that the statements by counsel are not. Sotomayor, what exact category of constitutional problem do you see? I'm sorry, Your Honor. What exact constitutional issue do you think this raises? I think it raises the presumption of innocence. It raises the right to hold the government to the burden of proof. And it offends the right to remain silent, because it put Mr. Vega-Perez in a position where he had to address what had already been said. Well, why did he? First of all, he said it was May. And second of all, it just seemed a fairly, you know, offhand comment about the fact that there were – I mean, he already knew that they were going to put on a defense, so it wasn't as if he was making it up. And he didn't say the defendant's story. He said the story. He didn't say the defendant. The defendant may say otherwise. The story may be otherwise. So why does that put any burden on the defendant? Well, there's a few things I would first note, that the prosecutor in the brief at page 24 makes it clear this wasn't an inadvertent statement. This was a deliberate strategic choice. The prosecutor in the brief says this was deliberately vague. So getting to the question of vagueness in this case. Deliberately what, I'm sorry? Deliberately vague. So there was thought about this. And I'll get back to that. But going to your point, the statement is not that the defendant will necessarily testify, but that the story that is going to be told by the defense. The defense never has to tell a story. The government has to prove a case. So it put before the jury. And maybe they will and maybe they won't. I just think this is really weak. Well, I would agree that this isn't the strongest argument. But I think it is a clear violation. And I think this Court should be concerned about this. Because what happened in this case is in a case where the evidence in this case was weak on the issue of knowledge, which was the critical issue for the jury to decide. Because there was no question. Weak on the issue of knowledge? Didn't the defendant testify he knew? He did not. I believe what he testified was that he did not know. What the government presented was the statement that was presented from the overnight interrogation where he said that he knew. He said that he knew that they put stuff in the car. They took his car and they put stuff in it. I'm sorry? They took his car, they put stuff in it somewhere he couldn't see it. And he knew that that was going on. Right. Yes. So maybe, I don't know, maybe I'm looking at the wrong thing here. But I'm looking at page 455, I think of the ER, but it's page 394 of some transcript. And maybe I'm reading it wrong. On April 2, 2022, when you entered the port of entry, did you know that you had methamphetamine in the vehicle you were driving? No. So he denied having the meth, right? He denied knowing that there were drugs in the car. Right. Even though the prior things were both ways. Correct. The statement that he gave during the overnight interrogation contradicted the testimony that he gave on the stand. But what we have here is the prosecution putting the defendant in the position where he has to get on the witness stand and to address this, or to at least present evidence, which he has no constitutional obligation to present. And the prosecutor, as I said, this wasn't a slip of the tongue. They not only said it in opening, they returned to the same language during their cross-examination of the defendant at ER 464. The exact kind of they did a recall back. They do the exact same thing. They talked about that it had been nine months, that his statement was different. So it's a very persuasive proposition in a case for the prosecution to do that. But they then returned to it again in closing, and they went even beyond it in  closing. What they did in closing was they didn't just say that the story was untrue. They said, I believe, I may say that this is not true. And I'm sorry? I would say that it's not believable. That's correct. I would say that it's not believable. I would say it's sort of a throat-clearing thing. It doesn't have any meaning. I mean, it just doesn't mean I believe it. It just means it's just a way of introducing a sentence. This Court has said that when the government gets up to make an argument and they say something affirmatively on behalf of the government, it's more than just a throwaway. And we know it's not a throwaway here because — All he said was that I will say this, and then he said it. And all he said was that it was believable. It's no different than saying — I'm sorry, Your Honor. Supposing he just said, what, the story is not believable. Would that be okay? Yes. All right. And he said, I'm going to — and he said, I'm telling you that the story is not believable. That's not okay? That's exactly right. And this Court has recognized that when the government says, essentially, I think this isn't believable, they're putting the power of the United States — He didn't say, I think this isn't believable. But there is no functional difference between, I would say because you had to have thought it, and I think. It's the same argument, Your Honor. But be that as it may — So, Counsel, am I correct that the only relief you sought from the district court is a mistrial? You did not seek a curative instruction or that it be struck? I was — first of all, I was not trial counsel. Okay. The counsel — But trial counsel, in this case, did not seek any further redress for this statement. But that doesn't — that just means that it's subject to plain error before this Court. And we think that when the government puts the power of the United States behind itself and tells the jury what it thinks the evidence shows, that there is a problem and that this Court should be concerned about. And it's because of that and because we think it meets the plain error standard we asked this Court to reverse on that issue. Even if the statement might have been, you know, slightly inappropriate, doesn't the fact that the defendant had indicated the intent to raise a duress defense allow the prosecution some additional leeway to get into that question in opening statement? Well, I would suggest no, Your Honor, because a defendant always can wait and see what the governance case is and decide at that point it's not worth putting on a case. You know — excuse me, Your Honor. The defendant always has that option. Even if they've given notice of a defense, they don't have to put on any evidence except for in this case where there was some compulsion on them by the government's actions to put on a case. And it's because of that that this is problematic. It's appropriate, as the government said in their brief, for them to anticipate what's going to happen. It's not appropriate to argue it before the defendant has had a chance to put on any information. Turning to the jury question — So let me just ask you a question on that, counsel. The part that I read, on April 2, 2022, when you entered the port of entry, did you know that you had methamphetamine in the vehicle you were driving? No. Doesn't that alone justify a juul instruction, given the facts here? Absolutely not, Your Honor. The fact that the defendant testified he didn't know, and the other facts we have, including that men loaded things in his car, that doesn't justify a deliberate indifference in juul instruction? I don't think so, because this Court in the Heredia decision has recognized that a deliberate indifference by coercion is not one that is deliberate. And I would suggest to the Court, even in the Ramos-Antondo case, where the Court articulated, there's two parts. I'm sorry. But if the jury believes a coercion, then the instruction was basically irrelevant. The question isn't — I mean, if he was in fact coerced, whether he knew or he didn't know, it would still prevail. The question wasn't whether he knew because of the coercions. I understood this to be an alternative argument, that is, if they don't believe the coercion. I think the question of whether to give an instruction is whether the evidence is legally — there's evidence that would support the instruction. And where there's evidence of coercion, there's not evidence of deliberation. That's if they believe it. They don't have to believe it. But not for the giving of the instruction. That's for the Court — whether they believe it is whether they acquit or not. I'm sorry. I don't understand your argument, counsel. I mean, if he testified he didn't know, and there is evidence to suggest that even if he didn't know, he was deliberately — he was deliberately ignorant. I don't understand what the problem could be with the Jewell instruction, even if it hadn't been jointly proposed. Well, I think the concern is — and I'm running out of time, but I would just say I think the concern is that I think the Court is thinking about what the jury does with the instruction. The question here is, in the first instance, whether there is a legal basis to give the jury instruction. And this Court in Heredia said when there's evidence of coercion. But your — I understood you were making a different argument about this instruction. The coercion point, it seems to me, doesn't work at all because it's completely dependent on whether it's believed or not. So the jury — the judge could certainly give an instruction on the assumption that it isn't believed. So the question is, if it isn't believed, is it an appropriate — if the coercion point is not believed, is this an appropriate instruction? And your argument, I thought, was — earlier was that there had to be some affirmative showing — affirmative action taken to not discover it. I don't — that's what I understood your argument to be, that it isn't simply enough that he knew it and didn't do anything. He has to affirmatively do something to not do it. And I don't understand what that means, but that's what I thought your argument was. I was making both arguments, Your Honor. I'm sorry if I wasn't clear. Okay. Because I think there is — there are two bases here that this was a problem to give. And I think one is that there is absolutely no evidence of deliberate actions to avoid knowing that there's drugs in the car. What would that mean? I mean, if you don't know and you don't — if you know the — I mean, this is an unusual case because usually they say they didn't know there was anything in the car. He knew there was something in the car. And he knew it was put — who put it there, which was these people that he knew had been drug dealers at some earlier point. And he knows that they put it somewhere where he couldn't see it. So what would be a plausible affirmative step he could take? He could stand there and look at the car? Or what could he do to not look at it? Well, I think there's a lot of cases where the Court has analyzed this step. And I think the Ramos-Otondo case, the Court articulates quite a long series of actions the defendant took that were indicative of deliberate avoidance of knowing what was going on. And I think — What about driving the car across the border when he knew there was stuff put in it by a group of shady people? That goes to knowledge. That goes to direct knowledge that there's drugs in there. Well, it also goes to not stopping the car and looking at it. Well, and I think, again, the Heredia decision would indicate that it's error for the Court to give a dual instruction in the evidence — where there is evidence of coercion. And I'm out of town sometime. We're going to give you some time for a rebuttal.  Thank you. Okay. May it please the Court, my name is Vanessa Cavoda, and I represent the United States. Excuse me. I'm nervous. So, it looks like Your Honors have voiced many of the arguments I was prepared to make today. But there is one matter that has not been aired yet. And with Your Honors' permission, I'd like to discuss waiver, if that's something that — You can argue it in any way you deem appropriate, Counsel. Thank you, Your Honor. So, as far as the waiver question goes, the case that Counsel cited in her 28-J notice, Lindsay, seems to imply that Perez holds that a mere avowal by a Counsel on a stipulation absent any indication in the record of further relinquishment of a right is insufficient. However, the government would argue that in this case we have more than what was present in Lindsay. And even though we firmly believe that we win on the merits anyway, for the sake of the legal question as to whether waiver should apply when a party stipulates knowingly, the government's position is that when an individual, when a party signs or avows in a jury stipulation that they are stipulating to an instruction and the law is clear, and then the district court in this case gave the parties ample opportunities to review the totality of those jury instructions in the record, asked the parties if they had any remaining qualms or objections, aired some of those remaining disputed issues, and then went further and actually printed out the final instructions before a break and asked the parties to look at them one more time. That is that additional step. Counsel, we don't have to, though, reach that question. Okay. No, no, no. It's a question we could find even assuming there wasn't waiver that the evidence justified the instruction. Yes, Your Honor. That's absolutely true. So going straight into that then, Your Honors, as Your Honors have mentioned, Alvarado, for example, even in the case where there was only an actual knowledge presented to the jury, it was still harmless because the evidence of actual knowledge is so strong. So that goes to counsel's argument that, well, actual knowledge was so clear that there was no need for a deliberate ignorance instruction or it was harmful, but that would then sort of go into the harmless error, or in this case, no plain error, if we are waiving that argument. And as far as just to touch briefly on the other issues, Your Honors, as Judge Berzon noted, that the anatomy of the sentence itself was so vague and sort of nondescriptive, the use of the conditional word may, that it really didn't reach the level of harm that counsel is avowing. And as far as whether or not the defendant could have, Mr. Perez, could have decided at the 11th hour to abandon his noticed arrest defense, still, even then, the statement could have been just a floating throwaway statement left in the air, and it could have been carried by a curative instruction in that case. But even so, it didn't force Mr. Perez to take the stand. Mr. Perez compelled himself to take the stand because in order to support his addressed defense, whatever was on the record before, whatever was on the prosecution's case in chief, there was nothing there that could have supported Mr. Perez's affirmative burden to advance that addressed defense. So if Mr. Perez wanted to support that defense, he would have had to have testified anyway. There was no compulsion to testify in this case. I see there are no questions. So if there's nothing further, I concede the remainder of my time. All right. Thank you, counsel. Thank you for your patience. We'll give you two minutes for rebuttal. Thank you, Your Honor. I just have two points I'd like to make. I think counsel suggested that I agree that the evidence of knowledge was strong. I did not. What I said was that the evidence of knowledge came from this one statement that was taken by the defendant. And as we repeatedly argued, that wasn't strong evidence, but it was evidence of knowledge in this case. And the statement that the prosecutor made in opening, the word may, addresses not whether it would be different. Excuse me. It addressed whether the statement would be different. So it may be different, but that he would put on a story. That he would tell a story. So the conditional doesn't say that they won't – he might tell a story. It's that he's going to tell a story, and it may be different. And I think that's important here in assessing whether this statement's – and again, this was a deliberate strategy by the government. It wasn't an offhand comment. And it was repeated. They used the same language about the nine months, the story. I mean, the repetition was a strategic and a litigation strategy in this case. Because of that, we ask this Court to reverse and remand Mr. Vega-Perez's conviction.   Thank you. We thank counsel for their arguments. The case just argued is submitted, and we will take a ten-minute recess. All rise.
judges: BERZON, BENNETT, Tunheim